# In the United States Court of Federal Claims
No. 22-820

(Filed: June 23, 2023)

| | |
|---|---|
| **ROSS J. LANINGHAM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

Ross J. Laningham, *pro se*, Cape Canaveral, Florida.

Joshua A. Mandlebaum, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Patricia M. McCarthy, Director, and William J. Grimaldi, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Also with him on the briefs were Jahn C. Olson, Lieutenant Colonel and Andrei Kouzema, Captain, U.S. Marine Corps, Office of the Judge Advocate General, Department of the Navy.

**OPINION AND ORDER**

LETTOW, Senior Judge.

This case arises from (1) the Department of the Navy's ("the Navy's") decision to deny the plaintiff, Ross J. Laningham, Navy Reserve non-disability retirement backpay for the period spanning April 30, 2003 to December 20, 2010, and (2) the Navy's termination of Mr. Laningham's initial notice of eligibility ("NOE") and disability benefits.[1]  Mr. Laningham filed his most recent suit in this court on July 28, 2022, challenging the Navy's decision to deny him Navy Reserve non-disability retirement backpay for 2003 to 2010.  Compl. at 14, ECF No. 1.[2]  The government filed a motion to dismiss on September 26, 2022, contending that the statute of

---

[1] An NOE authorizes a disabled reservist to receive "military medical treatment and disability pay and allowances."  *Laningham v. United States*, 2 Cl. Ct. 535, 540 (1983) (*Laningham I*).

[2] The complaint is consecutively paginated and will be cited as "Compl. at [page number]."

limitations barred Mr. Laningham's claim for retirement backpay.  Def.'s Mot. to Dismiss ("Def.'s Mot. to Dismiss Count I"), ECF No. 6.  Mr. Laningham filed a response to the Navy's motion to dismiss and a supplemental brief, which the court considered together.  Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp. Count I"), ECF No. 11; Pl.'s Suppl. to Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp. Brief Count I"), ECF No. 9; Order of Nov. 10, 2022, ECF No. 13.  The Navy replied on November 10, 2022.  Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply Count I"), ECF No. 15.

Subsequently, the court accepted a submission from Mr. Laningham, dated October 18, 2022, as an amended complaint.  Order of Dec. 2, 2022, ECF No. 18; Am. Compl., ECF No. 19.  Mr. Laningham's amended complaint added a second count, challenging the Navy's termination of his NOE and disability benefits.  Am. Compl. at 2.  After the court granted the government's motion for an extension of time to respond to Mr. Laningham's second count, *see* Order of Jan. 30, 2023, ECF No. 21, the government filed a motion to dismiss Mr. Laningham's second count on March 17, 2023, *see* Def.'s Mot. to Dismiss Count II, ECF No. 22.  On April 19, 2023, the court granted Mr. Laningham's motion for an extension of time to file his response to the government's motion to dismiss count II.  Pl's Mot. for Extension, ECF No. 23; Order of Apr. 19, 2023, ECF No. 24.  On April 27, 2023, Mr. Laningham filed a motion to stay proceedings, Pl.'s Mot. for a Stay of Proceedings, ECF No. 25, to which the government responded on May 11, 2023, Def.'s Resp. to Pl.'s Mot. to Stay, ECF No. 28.  The court denied the motion to stay and directed Mr. Laningham to file his response to the motion to dismiss count II by May 31, 2023.  Order of May 18, 2023, ECF No. 29.  Mr. Laningham did not meet that deadline, but rather sought more time to respond.[3]  Additional time was granted, but he thereafter did not file a response.

At issue are 1) whether Mr. Laningham's claim for Naval Reserve non-disability retirement backpay is barred by the statute of limitations and 2) whether Mr. Laningham's claim for disability benefits is barred by res judicata.

Briefing has been completed and the motions are ready for disposition.

---

[3] On May 30, 2023, Mr. Laningham filed a motion for an extension of 30 days to respond to the government's motion to dismiss count II.  Resp. to Gov't Mot. ("Pl.'s Second Mot. for Extension of Time"), ECF No. 30.  The court granted his motion in part, allowing him an additional ten days to respond.  Order of May 31, 2023, ECF No. 32.  On May 30, 2023, Mr. Laningham also filed a motion for reconsideration of the court's denial of his motion to stay proceedings.  Mot. for Recons. to Present New Evid. in Reply to Def.'s Resp. to Pl's Mot. for a Stay of Proceedings ("Pl.'s Mot. for Recons."), ECF No. 31.  The court denied this motion.  Order of June 2, 2023, ECF No. 33.  Then, on June 9, 2023, Mr. Laningham filed a motion to consolidate cases and amend pleadings.  Mot. for Consolidation of Case No. 00820C with 3 Related Cases and Leave to File an Am. Compl. ("Pl.'s Mot. for Consolidation and for Leave to File a Second Am. Compl."), ECF No. 34.  The court denied this motion.  Order of June 12, 2023, ECF No. 35.

## BACKGROUND[4]

### A. *Laningham's Service in the Navy*

Mr. Laningham enlisted in the Navy Reserve in 1961.  Def.'s Mot. to Dismiss Count I at 1.  He entered active duty in February 1967 and became a commissioned officer in May 1967. *Id.*  Mr. Laningham then transferred back to the Navy Reserve in 1971, where he served until he was honorably discharged in 1995.  *Id.*; *see* Am. Compl. at 9.

### B. *Naval Reserve Non-Disability Retirement Backpay*

#### 1. *Laningham becomes eligible for Naval Reserve non-disability retirement pay.*

In 1989 Mr. Laningham received notice from the Navy that he had completed the minimum service requirements that would make him eligible to receive Naval Reserve non-disability retirement pay on his sixtieth birthday.  Compl. at 2; Compl. App. Ex. 1, ECF No. 1-1.[5] The Navy issued Mr. Laningham's notice on December 15, 1989.  Compl. at 2.  Such a notice is referred to as the 20-year letter because a Naval Reserve member typically must serve for 20 years to be eligible for retirement pay.  The notice secured Mr. Laningham's right to retirement pay at age 60.  *See* Compl. App. Ex. 1; Def.'s Mot. to Dismiss Count I at 2; 10 U.S.C. § 12731. The 20-year letter stated that Mr. Laningham had "completed all requirements and [was] eligible to receive retired pay upon reaching age 60" and that his "eligibility may not be denied or revoked unless it resulted directly from fraud or misrepresentation on [Mr. Laningham's] part." Compl. App. Ex. 1.

Mr. Laningham's 20-year letter had his Statement of Service attached to it.  Compl. App. Ex. 1-2.  A Statement of Service lists a servicemember's qualifying service that the Navy "used to document [the servicemember's] initial eligibility" for retirement pay.  Compl. App. Ex. 1. Mr. Laningham's attached Statement of Service documented only 18 years of service, rather than the required 20 years of service.  *See* Compl. App. Ex. 1-2; Compl. App. Add. at 1, 3.

On April 30, 2003, Mr. Laningham reached age 60.  Compl. at 2.  He was therefore eligible for retirement pay.  The government did not automatically start issuing retirement pay to

---

[4] The recitations that follow do not constitute findings of fact but rather are recitals attendant to the pending motions and reflect matters drawn from the pleadings, motions, and attachments to them.

[5] Mr. Laningham attached an appendix to his initial complaint and an appendix to his amended complaint.  Each appendix includes an addendum and exhibits.  *See* Compl. App.  The addendums are consecutively paginated and will be cited as "Compl. App. Add. at [page number]" and "Am. Compl. App. Add. at [page number]."  The exhibits attached to the complaint are labeled exhibits 1 through 12 and will be cited as "Compl. App. Ex. [number]" and the exhibits attached to the amended complaint are labeled exhibits 13 through 20 and are consecutively paginated and will be cited as "Am. Compl. App. Ex. [number], at [page number]."

Mr. Laningham on his sixtieth birthday because eligible reserve members must submit an application for retirement pay.  Compl. at 1-2; Def.'s Mot. to Dismiss Count I at 2; 10 U.S.C. § 12731(a).

2. *Laningham's first and second applications for Naval Reserve non-disability retirement pay.*

Mr. Laningham first tried to apply for Naval Reserve non-disability retirement pay in 2008, but he mailed applications to two incorrect addresses.  Compl. at 5; Compl. App. Ex. 7-8.[6]  Mr. Laningham addressed both applications to the Navy Reserve Forces Command and used variations of the address of the Navy Reserve Personnel Center in New Orleans, Louisiana.  *See* Compl. at 5; Compl. App. Exs. 6-8.  When Mr. Laningham received his 20-year letter in 1989, the Naval Reserve Personnel Center was processing Naval Reserve retirement pay applications in New Orleans, Louisiana, but later the Navy Personnel Command started processing Naval Reserve retirement pay applications in Millington, Tennessee.  *See* Compl. at 5; Compl. App. Exs. 9(2)-(3).  Initially, on June 7, 2008, Mr. Laningham addressed his application to the Navy Reserve Force Command at the address for the Navy Reserve Personnel Center on his 20-year letter's letterhead, which was in New Orleans, Louisiana.  Compl. at 5.  His application of June 7, 2008 was returned to him as undeliverable because it was addressed to an incomplete and incorrect address.  Compl. at 5; *see* Compl. App. Ex. 1, 7; Pl.'s Resp. Count I at 4.  Second, on June 22, 2008, Mr. Laningham again attempted to submit his application for Naval Reserve retirement pay.  *See* Compl. at 5.  Mr. Laningham addressed the second application "to the . . . incorrect mailing address [in New Orleans, Louisiana] that was printed on the back of [his] application['s] [DD Form 108]."  *See* Compl. at 5; Compl. App. Exs. 6, 8, 9(2).[7]  Not only was the second address he used printed on the back of the DD Form 108, but also it was provided to Mr. Laningham telephonically by the Navy "in Washington" when he called to "request[] an updated address."  Pl.'s Resp. Count I at 3-4.  The second application was not returned to Mr. Laningham, Compl. at 6, but he also did not start receiving retirement pay, *see generally* Compl.

3. *Laningham's third application for Naval Reserve non-disability retirement pay.*

Eight years later, on December 15, 2016, Mr. Laningham mailed a third application for Naval Reserve non-disability retirement pay.  Compl. at 6.  This application was correctly addressed to the Navy Personnel Command in Millington, Tennessee and it was received by the Navy on December 20, 2016.  Pl.'s Resp. Count I at 4.  The Defense Finance Accounting Service ("DFAS"), which is part of the Department of Defense and oversees payments to servicemembers, then considered his application.  DFAS, *About DFAS*,

---

[6] Neither Mr. Laningham nor the government directly state whether the two applications Mr. Laningham mailed in 2008 were complete or incomplete.  *See* Pl.'s Resp. Count I at 4; Compl. at 5; Compl. App. Ex 8; Compl. App. Ex 10(2) (referring to Mr. Laningham's June 22, 2008 application as a letter).

[7] DD Form 108 is titled "Application for Retired Pay Benefits."  *See* Navy, *Forms for Download*, https://www.mynavyhr.navy.mil/Career-Management/Reserve-Personnel-Mgmt/Forms-for-Download/ (last visited June 23, 2023).

https://www.dfas.mil/Pressroom/aboutDFAS/ (last visited June 23, 2023).  Mr. Laningham downloaded the third application form that he mailed in 2016 from the internet.  Pl.'s Resp. Count I at 4.[8]  Before mailing his third application in 2016, Mr. Laningham called the Navy Personnel Center.  *Id.* at 10-11.  This was the first time that he spoke with the Navy Personnel Command on the telephone.  *See id.* at 11.[9]  He called to verify that their records documented 18 years of service; the representative told Mr. Laningham "that she could not talk to [him] because [his] name had been 'flagged.'"  *Id.* at 11.

In 2017, after Mr. Laningham's third application was received, the Navy mailed Mr. Laningham a retirement packet.  Pl.'s Resp. to Count I at 4-5.  "The enclosed instructions cautioned retirees not to mail applications to [the] address on the form."  Compl. at 6.

### 4. *DFAS approves Laningham's third application for Naval Reserve non-disability retirement pay going forward and retroactively to December 21, 2010.*

On April 12, 2018, DFAS determined that it would grant Mr. Laningham Naval Reserve non-disability retirement pay going forward and retroactively to December 21, 2010, which was six years before the Navy received Mr. Laningham's 2016 application.  Def.'s Mot. to Dismiss Count I at 2-3.  At that time, the Navy Personnel Command issued Mr. Laningham a new Statement of Service which documented 23 years of service.  Compl. App. Ex 10(1).

Mr. Laningham requested that DFAS award him $160,667.20 in backpay for the time in between his sixtieth birthday in 2003 and December 20, 2010.  Def.'s Mot. to Dismiss Count I at 3.  On July 24, 2018, DFAS denied his request for backpay before December 20, 2010.  *Id*; *see* Compl. at 7.  In its denial, DFAS cited the Barring Act, 31 U.S.C. § 3702(b).[10]  Compl. App. Ex. 10(1).

### 5. *Laningham appeals DFAS's denial of backpay before December 20, 2010.*

Mr. Laningham then appealed DFAS's decision to deny backpay before December 20, 2010 to the Defense Office of Hearings and Appeals ("DOHA").  Def.'s Mot. to Dismiss Count I

---

[8] Mr. Laningham does not directly state how or where he found the Navy Personnel Command's correct address in 2016.  In 2017 the Navy Reserve retirement pay application's DD Form 108 still had the incorrect address for applications, *i.e.* the Navy Reserve Personnel Center's New Orleans, Louisiana address.  Pl.'s Resp. Count I at 4-5.  The address was not corrected on DD Form 108 to the Navy Personnel Command's address in Millington, Tennessee until 2018, after Mr. Laningham requested that it be updated.  *Id.* at 5.  The court notes that Mr. Laningham downloaded his 2016 application from the internet.  *Id.* at 4.

[9] Mr. Laningham's previous call was to the Navy in Washington, DC, not the Navy Personnel Command.  Pl.'s Resp. Count I at 3-4.

[10] Unless an exception applies, 31 U.S.C § 3702 states that "[a] claim against the Government" including "claims involving uniformed service members' . . . retired pay" "must be received by [the Secretary of Defense] or by the agency that conducts the activity from which the claim arises within 6 years after the claim accrues."  31 U.S.C. § 3702(a)-(b).

at 5.  On June 12, 2019, DOHA denied Mr. Laningham's appeal of DFAS's decision.  DOHA stated that "DFAS's application of the Barring Act [was] proper in th[e] case."  Compl. App. Ex. 10(1)-(2).  It stated that "[P]rior to []his application in December 2016 neither the Navy nor DFAS has any evidence that an application for retired pay was filed by [him]."  Compl. App. Ex. 10(1)-(2).  It continued:

> You must prove, by clear and convincing evidence, on the written record that the United States is liable to you for the amount claimed.  Claims are adjudicated on the written record on the basis of facts as established by the agency concerned and by evidence submitted by you, the claimant.  You offered as evidence your June 22, 2008 letter to the Commander, Naval Reserves Command requesting retired pay.  The offered letter is the only evidence of a filing of a possible timely claim for retired pay in this case.  *See* Department of Defense ("DoD") Instruction 1340.21 (May 12, 2004) E5.3 and E5.7.  There is no additional evidence that you further pursued your claim for retired pay until 2016.  As a result you have not met your burden of persuasion that you pursued your claim after it accrued.

Compl. App. Ex. 10(2) (footnote omitted).

The Defense Office of Hearings and Appeals also stated that Mr. Laningham "ha[d] the right to seek waiver of the Barring Act through the Assistant Secretary of the Navy."  Compl. App. Ex. 10(2).  It stated that "[he] may also have a possible action before the Board of Correction of Naval Records ("BCNR") arising from the circumstances surrounding [his] attempt(s) to notify the Navy of [his] application for retired pay," noting that BCNR's actions are discretionary.  Compl. App. Ex. 10(2).  The Defense Office of Hearings and Appeals also stated that Mr. Laningham "may request reconsideration" of DOHA's appeal decision if they receive his written request for reconsideration and any documentation by 30 days of the date of the appeal decision.  Compl. App. Ex. 10(2).

### C.  Termination of NOE and Disability Benefits

#### 1.  Laningham received NOE and disability benefits.

On June 9, 1978, while on training orders for active duty, Mr. Laningham was in a rear-end collision.  Am. Compl. App. Ex. 20, at 2; Def.'s Mot. to Dismiss Count II at 2.  After the accident, Mr. Laningham experienced neck pain and therefore was placed on non-drill non-pay status effective September 6, 1979.  *See* Am. Compl. App. Ex. 20, at 2; Def.'s Mot. to Dismiss Count II at 2.  He subsequently received his NOE for disability benefits also effective September 6, 1979.  Am. Compl. App. Ex. 20, at 3; Def.'s Mot. to Dismiss Count II at 2.

On June 17, 1980, approximately two years after his accident, the Physical Evaluation Board found that Mr. Laningham was fit for duty, but he was not in fact returned to any duties.  Am. Compl. App. Ex. 20, at 3; Def.'s Mot. to Dismiss Count II at 2.  Because of the Physical Evaluation Board's finding, on June 30, 1980, the Navy Finance Center terminated Mr. Laningham's NOE and disability benefits.  Am. Compl. App. Ex. 20, at 3; Def.'s Mot. to Dismiss Count II at 2.  Mr. Laningham in turn challenged the Physical Evaluation Board's finding that he was fit for duty.  Def.'s Mot. to Dismiss Count II at 2-3.  A few months later, in

October 1980, Mr. Laningham requested that BCNR change the date of his NOE from the date he was placed on non-drill non-pay status, September 6, 1979, to the date of his accident, June 9, 1978, award him backpay accordingly, and reinstate his disability benefits; BCNR denied Mr. Laningham's requests. *Id.* at 3.

> 2. *Laningham filed suit in the Court of Federal Claims challenging BCNR's decision (Laningham I).*

In 1981, Mr. Laningham filed suit in this court to challenge BCNR's decision. Def.'s Mot. to Dismiss Count II at 3 (discussing *Laningham I*, 2 Cl. Ct. 535 (1983)); *see* Am. Compl. App. Ex. 20, at 5. On May 31, 1983, the court held that the Navy had improperly terminated Mr. Laningham's NOE and corresponding disability benefits because 1) the Physical Evaluation Board had not found Mr. Laningham fit to return to the duties for which he had been responsible before his disability and the Navy had not in fact restored him to duty, and 2) Mr. Laningham's case was not yet complete because he had not been separated from the Navy because he was unfit for duty because of his disability. Def.'s Mot. to Dismiss Count II at 3; *see Laningham I*, 2 Cl. Ct. at 558. Though the court held that Mr. Laningham was entitled to receive disability benefits until his case with the Navy reached a final disposition, the court also held that Mr. Laningham was not owed disability benefits for the period between his accident and when he was placed on non-drill non-pay status because during that period, he performed his normal duties. Def.'s Mot. to Dismiss Count II at 3; *see Laningham I*, 2 Cl. Ct. at 558. Because of the court's holding, Mr. Laningham was awarded disability benefits pending the Navy's completion of his case, which was reached the next day, on June 1, 1983. Def.'s Mot. to Dismiss Count II at 3. In its final disposition of Mr. Laningham's case, the Physical Evaluation Board reprocessed Mr. Laningham's case and found him fit for duty. *Id.* He was discharged effective June 1, 1983, therefore terminating his NOE and corresponding benefits. *Id*; *see* Am. Compl. App. Ex. 20, at 6.

> 3. *Laningham filed an application with BCNR, which recommended reinstating his NOE.*

In 1986, Mr. Laningham filed an application with BCNR to challenge the Navy's decision to discharge him and request that BCNR reinstate his NOE and corresponding disability benefits. Def.'s Mot. to Dismiss Count II at 3-4; *see* Am. Compl. App. Ex. 20, at 1. The Board initially denied his application but then, on March 19, 1986, it recommended that the Navy void Mr. Laningham's discharge, reinstate his NOE and update his records to show it was never terminated, and deny his request for constructive service credit. *See* Am. Compl. App. Ex. 20, at 7-10; Def.'s Mot. to Dismiss Count II at 3-5. The Board also recommended that the Disability Evaluation System consider Mr. Laningham's case *de novo*. *See* Am. Compl. App. Ex. 20, at 7-10.

> 4. *Assistant Secretary of the Navy disapproved of BCNR's recommendation to reinstate Laningham's NOE.*

The Assistant Secretary of the Navy did not approve BCNR's recommendation to reinstate Mr. Laningham's NOE but he did recommend that the Disability Evaluation System

process Mr. Laningham's case and that a Medical Board make a determination regarding his physical condition on the date of his discharge, June 1, 1983.  Def.'s Mot. to Dismiss Count II at 4.  The Medical Board in turn found that Mr. Laningham was fit for duty on the date of his discharge; a finding that the Central Physical Evaluation Board accepted on August 17, 1987.  *Id.*  Based on the finding that Mr. Laningham was fit for duty on the date of his discharge, the Assistant Secretary for the Navy approved BCNR's recommendation to void his 1983 discharge.  *Id.*  Therefore, it directed the Naval Military Personnel Command to determine what status Mr. Laningham would have had were he not discharged.  The Naval Military Personnel Command did so and recommended granting Mr. Laningham constructive service credit and backpay.  *Id.*  The Assistant Secretary of the Navy approved of the Naval Military Personnel Command's recommendations.  *Id.*

### 5.  Navy reinstated Laningham's NOE.

Later, the Secretary of the Navy ordered that the Navy reconsider the Assistant Secretary of the Navy's decision because it did not follow BCNR's recommendations.  *See* Def.'s Mot. to Dismiss Count II at 4-5.  The General Counsel of the Navy in turn approved of BCNR's original recommendations from March 19, 1986, including reinstating his NOE and denying his request for constructive service credit.  *Id.* at 5.  The Secretary of the Navy subsequently decided to let Mr. Laningham choose between reinstating his NOE or getting constructive service and backpay; Mr. Laningham chose reinstating his NOE, which the General Counsel of the Navy then recommended.  *Id.*  Therefore, on December 21, 1990, Mr. Laningham was informed by the Navy that his NOE was being reinstated.  He thereafter received disability benefits through December 21, 1990.  *See id.*

### 6.  Laningham failed to attend his Navy medical examination.

On October 15, 1990, to enable the Disability Evaluation System to consider Mr. Laningham's case *de novo*, the Naval Military Personnel Command directed the Commander of the Naval Reserve Force to schedule a medical evaluation for Mr. Laningham.  Def.'s Mot. to Dismiss Count II at 5.  Captain Donald Edington coordinated with Mr. Laningham to appear at the Orlando, Florida Naval hospital in December 1990 for an evaluation.  *Laningham v. United States*, No. 85-494 at 7 (Fed. Cl. Sept. 12, 1994) (supplemental opinion).[11]  The Navy issued an order for Mr. Laningham to appear for his medical evaluation.  *Id.*  Mr. Laningham then refused to attend the evaluation because he was unsure of the authority by which the Navy issued the order, because he did not have his medical records, and because the Navy could not find his records.  *Id.*; *see* Am. Compl. at 15-17; Def.'s Mot. to Dismiss Count II at 5-6.  Because the Naval hospital determined that it could make an evaluation without complete medical records, Mr. Laningham was again ordered to attend his medical evaluation at the Orlando, Florida Naval hospital on January 25, 1991.  Def.'s Mot. to Dismiss Count II at 6; *see* Am. Compl. App. Add. at 6; *Laningham v. United States*, No. 85-494 at 7 (Fed. Cl. Sept. 12, 1994) (supplemental opinion).  Mr. Laningham refused, stating he would not attend until the Navy provided him with the medical records he requested.  Def.'s Mot. to Dismiss Count II at 6.  Because he did not report for his appointments and his refusals were unreasonable, the Navy then terminated Mr.

---

[11] The court's supplemental opinion appears in the appendix of the defendant's motion to dismiss count II at pages A183-190.

Laningham's NOE and disability benefits.  *Id.*; *Laningham v. United States*, No. 85-494 at 7 (Fed. Cl. Sept. 12, 1994) (supplemental opinion).  The termination was effective January 10, 1991.  *Laningham v. United States*, No. 85-959 at 7 (Fed. Cl. Sept. 12, 1994) (supplemental opinion).  After Mr. Laningham appealed the termination decision, the Secretary of the Navy affirmed the termination.  Def.'s Mot. to Dismiss Count II at 6.

> 7. *Court decisions issued on January 5, 1994 (Laningham III) and September 12, 1994 (supplemental opinion).*

On January 5, 1994, the Court of Federal Claims addressed whether the Navy had complied with the court's 1983 order to issue Mr. Laningham disability pay until his NOE is properly terminated.  *See Laningham v. United States,* 30 Fed. Cl. 296, 303 (1994) (*Laningham III*).[12]  The court held that the Assistant Secretary of the Navy's action departing from BCNR's recommendation to reinstate Mr. Laningham's NOE was arbitrary, but that it might be moot because the Navy's General Counsel had ordered that Mr. Laningham's NOE be reinstated, and that Mr. Laningham was entitled to payment under his NOE until it was properly terminated.  *See id.* at 303, 315-16.  It also directed DFAS to calculate the damages, which it did on March 4, 1994.[13]  *Laningham III*, 30 Fed. Cl. at 316; Am. Compl. App. Add. at 7; Decision by DFAS, *Laningham*, No. 85-494, (Fed. Cl. March 4, 1994), ECF No. 14.  The court denied the government's motion for reconsideration of its decision.  Order Denying Def.'s Mot. for Recons., *Laningham*, No. 85-494 (Fed. Cl. March 4, 1994), ECF No. 13.[14]

On September 12, 1994, the court issued a supplemental opinion holding that the Navy's termination of Mr. Laningham's NOE and disability benefits, which was effective on January 10, 1991, was proper.  *See Laningham v. United States*, No. 85-494 at 7-8 (Fed. Cl. Sept. 12, 1994) (supplemental opinion).  It reasoned that the termination was proper because Mr. Laningham refused to attend his medical evaluation, as required under the Secretary of the Navy's Instructions ("SECNAVINST") number 1770.3.  *Id.* at 7 ("[W]e view his conduct to be totally unwarranted and reprehensible, sufficient to disqualify him for further benefits from and after the cut-off date of January 10, 1991.  Thus, we hold that . . . Laningham is entitled to no further

---

[12] The court also considered whether the Navy's transfer of Mr. Laningham to record review non-pay status effective September 5, 1979 should be voided, whether the Navy had discriminated against reservists, and whether Mr. Laningham had been promoted to Captain or should be considered for promotion to Captain.  The court ruled in the negative on all three counts.  *See generally Laningham III*, 30 Fed. Cl. 296.

[13] The Defense Finance Accounting Service calculated that, for the period from December 20, 1990 to January 10, 1991, Mr. Laningham should be awarded $2,789.68 minus his civilian earnings.  It also stated that if his NOE was in effect through February 28, 1994, he should be awarded $138,734.34 minus his civilian earnings.  Def.'s Mot. to Dismiss Count II at 9.

[14] The government alleges that the court was not aware of the Navy's termination of Mr. Laningham's disability benefits, which was effective on January 10, 1991.  Def.'s Mot. to Dismiss Count II at 7.

disability benefits from and after January 10, 1991, due to his contumacious refusal to follow valid written orders and his failure to comply with applicable regulations."). Because the Navy had already paid Mr. Laningham disability benefits until December 21, 1990, the court held that Mr. Laningham should be awarded $2,789.68 for the period between December 22, 1990 and January 10, 1991. *Id.* at 8. The court denied Mr. Laningham's motion for reconsideration of the decision rendered on September 12, 1994. Order Denying Mot. for Recons., *Laningham*, No. 85-494, (Nov. 17, 1994), ECF No. 29. Mr. Laningham then appealed to the Federal Circuit, but his case was dismissed on April 6, 1995 for failure to prosecute. *Laningham v. United States*, 52 F.3d 344 (Fed. Circ. 1995) (unpublished table decision). On September 30, 1995, Mr. Laningham was honorably discharged. Am. Compl. App. Ex. 16.

### 8.   *Mr. Laningham's psychiatric disorder and related cervical strain.*

On January 22, 2020, the Department of Veterans Affairs granted Mr. Laningham an 100% service-connected disability for psychiatric disorder resulting from cervical strain. Am. Compl. at 8, 34; *See* Am. Compl. App. Ex. 14 (the notification from the Department of Veterans Affairs that Mr. Laningham submitted to the court states only that the Department of Veterans Affairs reached a decision on his Veterans Affairs benefits but does not say what the decision was).[15]

## STANDARDS FOR DECISION

The court must dismiss a claim over which it lacks subject-matter jurisdiction. *See* Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"); RCFC 12(h)(3). A plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject-matter jurisdiction over his claim. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). While filings by *pro se* plaintiffs are "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), this leniency "with respect to mere formalities does not relieve them of jurisdictional requirements." *Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020).

The Tucker Act confers this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act does not establish substantive rights, a plaintiff seeking to establish this court's jurisdiction under the Act must "identify a substantive right for money damages against the

---

[15] This follows the March 9, 1983 decision of the Regional Physical Evaluation Board's finding that Mr. Laningham was "[not physically qualified] due to depressive reaction without causal connection to cervical strain" and his cervical strain was not separately disqualifying. Am. Compl. App. Ex. 20, at 5. It also follows BCNR's 1986 recommendation to give plaintiff *de novo* processing through the Disability Evaluation System, Am. Compl. App. Ex. 20, at 10, and Mr. Laningham's failure to appear for his evaluation.

United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

Suits under the Tucker Act are subject to a six-year statute of limitations.  28 U.S.C. § 2501.  The six-year statute of limitations is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)."  *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed. Cir. 2000).  The six-year clock starts when the claim first accrues.  *See* 28 U.S.C. § 2501.  "A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the [g]overnment and entitle the claimant to institute an action."  *Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964) (citing *Cosmopolitan Mfg. Co. v. United States*, 156 Ct. Cl. 142, 143 (1962); *Empire Inst. of Tailoring, Inc. v. United States*, 142 Ct. Cl. 165, 167 (1958)).

Non-disability retirement pay for reserve servicemembers is governed by 10 U.S.C. Ch. 1223.  Section 12731 includes age and service requirements that a Navy Reserve servicemember must meet to be entitled to retirement pay.  Under section 12731, "a [Navy Reserve servicemember] is entitled, upon application, to retired pay" if they are 60 years of age and have "performed at least 20 years of service."  *See* 10 U.S.C. § 12731(a), (f)(1).  The Navy Reserve servicemember also must "not [be] entitled, under any other provision of law, to retired pay from an armed force or retainer pay as a member of the Fleet Reserve or the Fleet Marine Corps Reserve."  10 U.S.C. § 12731(a).

The Navy Reserve servicemember must apply for non-disability retirement pay; retirement pay does not start automatically when the servicemember reaches the age and service requirements.  10 U.S.C. § 12731(a).  After meeting the age and service requirements, the servicemember must apply to "the Secretary of the military department[] or the Secretary of Homeland Security . . . having jurisdiction at the time of application over the armed force in which the applicant is serving or last served."  10 U.S.C. § 12731(b).

The government also has affirmative responsibilities under section 12731.  The government must notify the Navy Reserve servicemember, in writing, of his or her eligibility for retirement pay after he or she has performed 20 years of service.  10 U.S.C. § 12731(d).  "The Secretary concerned shall notify each person who has completed the years of service required for eligibility for retired pay under this chapter.  The notice shall be sent, in writing, to the person concerned within one year after the person completes the service.  The notice shall include notice of the elections available to such person . . . and the effects of such elections."  *Id.*

There are codified protections for a Navy Reserve servicemember who is notified of their eligibility by the government under 10 U.S.C. § 12731(d) but who has not in fact completed the required 20 years of service.  Under section 12738(a), after a person "is notified in accordance with [10 U.S.C. § 12731(d)] that the person has completed the years of service required for eligibility for retired pay under this chapter" or "is granted retired pay under this chapter," "the person's eligibility for retired pay may not be denied or revoked on the basis of any error, miscalculation, misinformation, or administrative determination of years of service performed . . . unless it resulted directly from the fraud or misrepresentation of the [servicemember]."  10 U.S.C. § 12738(a).  Notwithstanding this protection, the servicemember's record may be revised

"to correct any error, miscalculation, misinformation, or administrative determination."  10 U.S.C. § 12738(b).  If their record is corrected, the Navy Reserve servicemember will still receive retirement pay but payment is calculated based on the years of service they actually performed.  *Id.*[16]

## ANALYSIS

The parties dispute whether Mr. Laningham's request for Navy Reserve non-disability retirement backpay for April 30, 2003 through December 20, 2010 is barred by the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501.

### A.  *Statute of limitations under the Tucker Act for Navy Reserve Non-Disability Retirement Backpay*

The parties disagree about when Mr. Laningham's claim first accrued and therefore whether his claim is barred by the Tucker Act's six-year statute of limitations.  The parties agree that turning 60 years of age and receiving a 20-year letter are necessary for a Navy Reserve member's non-disability retirement pay claim to accrue, but they disagree about whether these events are sufficient for accrual.  *See* Compl. at 5-14; Def.'s Mot. to Dismiss Count I at 5.  Mr. Laningham argues that they are not sufficient and that his cause of action did not accrue until 2018, when DFAS denied his claim for retirement backpay for April 30, 2003 through December 2010.  Compl. at 7.  Mr. Laningham argues that because the Navy partially granted his 2016 application for retirement pay, rather than rejecting it, the date DFAS rejected his claim for retirement backpay for 2003-2010, July 24, 2018, controls when the statute of limitations accrued rather than the date he submitted his 2016 application.  Compl. at 7.  In the alternative, Mr. Laningham argues that his cause of action accrued on the date he submitted his 2016 application, namely December 15, 2016, because 10 U.S.C. § 12731 states that Navy Reserve retirement pay is available "upon application."  *See* Compl. at 7.  Finally, plaintiff argues that the statute of limitations does not bar his claim because the government's actions and failure to act inhibited his 2008 application from being received and therefore the principle of constructive possession should toll the statute of limitations.  *See* Compl. at 8-13.  Defendant, on the other hand, avers that turning 60 years of age and receiving a 20-year letter are sufficient for a claim to

---

[16] In addition to the Navy Reserve servicemember's and government's affirmative responsibilities regarding servicemembers' non-disability retirement pay under subsections 12731(a) and (d), in 2015 the Navy Military Personnel Manual expanded upon the obligations for both parties.  U.S. Dep't of the Navy, MILPERSMAN 1820-030, *Non-Regular Reserve Retirement with Pay – Qualifications, Procedures, Submissions and Processing* (Dec. 1, 2015).  Although Mr. Laningham cites MILPERSMAN 1820-030, it was not in effect at the time he received his 20-year letter in 1989 or when he turned 60 years of age in 2003.  Regardless, although MILPERSMAN 1820-030 states that the Navy Personnel Command will send a "notification package to eligible personnel approximately 6 months prior to their eligibility date," it also states that "[i]f an individual does not receive the notification within 4 months prior to [their] eligibility date, the [service]member should . . . contact Navy Personnel Command" via telephone or go to Navy Personnel Command's website to access forms."  *Id.* § 5.c.(1).

accrue and therefore trigger the six-year statute of limitations.  Def.'s Mot. to Dismiss Count I at 5.  Defendant also contends that the continuing claims doctrine does not entitle plaintiff to backpay and the accrual suspension doctrine does not apply.  *Id.* at 8-10.

A Reserve retirement pay application claim accrues when the servicemember has reached 60 years of age and the government notifies the Reserve servicemember that he or she has completed the required years of service for eligibility.  *See Garcia v. United States*, 233 Ct. Cl. 110, 115-16 (1980);[17] *Brooks v. United States*, 70 Fed. Cl. 479, 484 (2006) (finding that plaintiff's claim accrued on his sixtieth birthday, which was the date on which he requested that his military pay commence, because "a cause of action accrues on the date upon which plaintiff claims he became eligible for retired pay"); *Campbell v. United States*, 138 Fed. Cl. 572, 577 (2018).  The notification of eligibility from the government is irrevocable, except if due to fraud or misrepresentation by the servicemember, because of 10 U.S.C. § 12738(a).  In the circumstances, Mr. Laningham received his 20-year letter notifying him of his eligibility in 1989 and he turned 60 years of age on April 30, 2003, his claim accrued in 2003.[18]  Therefore, his claim for retirement backpay for April 30, 2003 through December 20, 2010 is barred by the six-year statute of limitations.

In addition, the continuing claims doctrine does not entitle Mr. Laningham to backpay, the accrual suspension doctrine does not apply, and the principle of constructive possession does

---

[17]  The court in *Garcia* discusses 10 U.S.C. § 1331, which is now 10 U.S.C. § 12731, and 10 U.S.C. § 1406, which is now 10 U.S.C. § 12738.  *See* 233 Ct. Cl. at 118-19.

The court in *Garcia* concluded that, unlike retirement pay claims for fulltime servicemembers, retirement pay claims for Reserve servicemembers have a statutory condition precedent which must be fulfilled before the claim accrues – namely, the government must notify the Reserve member that they are credited with 20 years of qualifying service.  *See* 233 Ct. Cl. at 116-19; *Friedman v. United States*, 159 Ct. Cl. 1, 9 (1962).  Because Reserve retirement pay requires the government agency to notify members "who ha[ve] completed the years of service required for eligibility for retired pay" and because the "eligibility for retired pay may not be denied or revoked on the basis of any error, miscalculation, misinformation[,] or administrative determination of years of service performed . . . unless the error is caused by [the servicemember's] fraud or misrepresentation," the court held that servicemember's claim accrued when he was informed by the agency that he had satisfied the years of service required for eligibility.  *Garcia*, 233 Ct. Cl. at 115-16.  The court reached this conclusion by looking at what is now 10 U.S.C. § 12738 and its legislative history.  *See id.*

[18] Although the Statement of Service attached to Mr. Laningham's initial 20-year letter indicated only 18 years of service, it was still determinative of his eligibility for Reserve retirement pay because of 10 U.S.C. § 12738.  Therefore, because it determined eligibility, his 20-year letter in 1989 was sufficient to satisfy the 20-year letter notification requirement for accrual of his claim.  In addition, although Mr. Laningham contends that the government's failure to mail him a retirement package should affect the accrual of his claim, MILPERSMAN 1820-030 did not go into effect until 2015, more than a decade after Mr. Laningham received his 20-year letter and turned 60 years of age.

not toll the statute of limitations. First, the continuing claims doctrine does not entitle him to backpay. Even if the continuing-claims doctrine applied, that would only enable the court to grant Mr. Laningham retirement pay for the period six years before he filed his complaint on July 28, 2022. *See Miller v. United States,* 180 Ct. Cl. 872, 878 (1967). Because he has already been granted retirement pay for those years, the continuing claims doctrine cannot grant him relief. Second, the accrual suspension doctrine does not apply. The accrual suspension doctrine applies to claims against the United States for purposes of 28 U.S.C. § 2501 when the plaintiff "either show[s] that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or . . . that [plaintiff's] injury was inherently unknowable at the accrual date." *Young v. United States,* 529 F.3d 1380, 1384 (Fed. Cir. 2008) (quoting *Martinez v. United States,* 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc)). When it applies, the claim's accrual date is suspended "until the claimant knew or should have known that the claim existed." *Id.* (quoting *Martinez,* 333 F.3d at 1319). Although the Navy had not updated some of its forms with the Navy Personnel Command's new address in Tennessee and plaintiff's second 2008 submission was never returned to him, Mr. Laningham never received retirement pay after his 2008 submission and before his 2016 application, which should have led him to believe that his 2008 application was not received or accepted. Notably, he did not submit any evidence of attempts to file an application between 2008 and 2016.[19] Therefore, the accrual suspension doctrine does not apply. Finally, the principle of constructive possession does not toll the statute of limitations. Although plaintiff argues that the Navy constructively possessed his application after he sent it in 2008 because it was never returned to him, the claim's accrual for purposes for the statute of limitations turns on plaintiff's knowledge of the facts of the claim. *See Young*, 529 F.3d at 1385. As a result, the continuing claims, accrual suspension, and constructive possession doctrines do not toll the statute of limitations.

Even if the court were to accept all of plaintiff's arguments about the predicates for Reserve retirement pay, Mr. Laningham's claim for backpay would still be fruitless.[20] This is because Mr. Laningham requests backpay for the period from April 30, 2003 through December 20, 2010, which is more than six years before the Navy received his application on December 20, 2016. If Mr. Laningham's claim accrued when he applied in December 2016, then although his July 28, 2022 suit in this court was filed within the court's six-year statute of limitations, his claim would still be unavailing because he seeks retirement pay for a period that occurred more than six years before he filed suit. *See Garcia*, 233 Ct. Cl. at 115-16, 119; Compl. App. Ex.

---

[19] The Defense Office of Hearings and Appeals found that other than his second 2008 submission, he did not submit any "evidence of a filing of a possible timely claim for retired pay" and "[t]here is no additional evidence that [he] further pursued [his] claim for retired pay until 2016." Compl. App. Ex. 10(2) (footnote omitted).

[20] In *Garcia*, plaintiff applied for Reserve retirement pay after turning 60 years of age but before the agency notified him of his eligibility. *Garcia*, 233 Ct. Cl. at 112-13. In Mr. Laningham's case, he applied for Reserve retirement pay after turning 60 years of age and after the Navy notified him of his eligibility. *See* Compl. at 2, 5-6. If the court adopts the postulate that the claim accrued upon application, considering that 10 U.S.C. § 12731 states that Navy Reserve retirement pay is available "upon application," Mr. Laningham's claim would have accrued when the Navy received his application on December 20, 2016.

10(1)-(2) (DOHA discussing DFAS's denial of Mr. Laningham's claim for retirement backpay for a period more than six years before his application, citing the Barring Act, 31 U.S.C. § 3702(b)).

### B.  Res Judicata for NOE and Disability Benefits Claim

Plaintiff's claim for disability benefits is barred by res judicata.  Res judicata includes both claim preclusion and issue preclusion.  *First Mortg. Corp. v. United States*, 961 F.3d 1331, 1338 (Fed. Cir. 2020).  "Issue preclusion operates only as to issues actually litigated, whereas claim preclusion may operate between the parties simply by virtue of the final judgment."  *Id.* (quoting *Young Engn'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir. 1983)).  Claim preclusion bars litigation of any matters that should have been raised in an earlier suit.  *Id.* at 1338.  "Generally, claim preclusion applies where: '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'"  *Id.* (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)).

Issue preclusion can be invoked against a party other than the United States when "1) the issue sought to be precluded [is] the same as the one involved in the prior action; (2) the issue [was] actually litigated; (3) the issue [was] determined by a valid and final judgment; . . . (4) the determination [was] essential to the prior judgment" and "[(5)] the party against whom preclusion is asserted [was] a party or [was] in privity with a party to the prior adjudication."  *See Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1346, 1346 n.4 (Fed. Cir. 2022).

Mr. Laningham contends that his claim for disability benefits is a request for the court to enforce the court's 1994 decision in *Laningham III*.  *See* Am. Compl. at 8, 18-22.  He avers that the Navy reissued rather than reinstated his NOE.  Mr. Laningham also contends that he is advancing new evidence regarding his NOE and disability benefits and raising new claims.  Am. Compl. at 8-9, 32-34.

The government contends that Mr. Laningham's count II is barred by res judicata.  In part, the government contends that Mr. Laningham is not requesting that the court enforce its 1994 decision in *Laningham III*, but rather is challenging the court's 1994 supplemental opinion.  Def.'s Mot. to Dismiss Count II at 16.[21]  It also contends that if count II includes any claims that are not barred by res judicata, they are time barred by the Tucker Act's six-year statute of limitations.  *Id.* at 18.

Mr. Laningham's claims in count II are barred by res judicata.  Mr. Laningham's count II requests that the court reinstate his NOE even though he challenged the termination of his NOE and disability benefits in a suit against the United States in this court in previous litigation involving the same set of transactional facts, which suit ended in a final judgment on the merits.  *See Grasty v. U.S. Pat. & Trademark Off.*, 211 F. App'x 952, 954 (Fed. Cir. 2007).

---

[21] The government contends that Mr. Laningham's count II is a collateral attack on the court's 1994 supplemental opinion, citing *First Mortg. Corp.*, 961 F.3d at 1338-40, but that decision addresses when a *defendant, not a plaintiff*, is precluded.  The general rule governs when a plaintiff is precluded.  *See supra* at 15.

In 1994, this court issued a supplemental opinion deciding that the Navy's termination of plaintiff's NOE but disability benefits on January 10, 1991 was valid because he refused to attend his medical evaluation and that Mr. Laningham was entitled to only $2,789.69.  His appeal in that regard was dismissed by the Federal Circuit in 1995 for failure to prosecute.  And, even if any claims were not barred by res judicata, they would be barred by the Tucker Act's six-year statute of limitations.  28 U.S.C. § 2501.[22]

## CONCLUSION

For the reasons stated, the government's motions to dismiss both counts I and II are GRANTED.

The Clerk is directed to enter judgment for the defendant.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[22] Even if the court read Mr. Laningham's count II to seek relief from the court's prior decision under Rule 60, he has exceeded the time constraints under the rule.  *See* RCFC 60 (requiring such motions be made "no more than a year after the entry of judgment or order").  In addition, although Mr. Laningham offers the Department of Veterans Affairs 2020 decision as new evidence, disability benefits from the Department of Veterans Affairs are distinct from his NOE and disability benefits at issue in this case.  *See* 38 U.S.C. § 1110; Kristy N. Kamarck & Mainon A. Schwartz, *Cong. Rsch. Serv.*, R40589, *Concurrent Receipt of Military Retired Pay and Veteran Disability*, 4-5 (2023).